IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff/Respondent, <br><br> vs. <br><br> WILFORD HARLAN "HUCK" SUNCHILD, <br><br> Defendant/Movant. | Cause No. CR 13-106-GF-BMM <br><br><br> ORDER |

Defendant/Movant Wilford Harlan "Huck" Sunchild moved to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 on April 25, 2017. Sunchild is a federal supervisee proceeding pro se.[1] His motion is denied.

**Preliminary Review**

Sunchild's motion is subject to preliminary review before the United States is required to respond. The Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of

---

[1] Sunchild completed his federal prison sentence and is scheduled to be on federal supervision until July 9, 2018. (*See* Doc. 80.)

1

constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). It remains the duty of the court, however, "to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

**Background**

In late 2011 and early 2012, Sunchild served as the Director of the Wellness Center, a program of Rocky Boy's Health Clinic. The Wellness Center operates as a health promotion and gym facility for residents of the Rocky Boy's Reservation. In the fall of 2011, Sunchild secured a grant agreement with a division of Nike, Inc. called the "Nike N7 Fund." Nike agreed to provide shoes and other apparel to the Chippewa Cree Tribe at a reduced rate to promote youth athletics and juvenile health. The agreement was to be fulfilled through the Wellness Center.

The charged conduct involves two types of monies related to the operation of the Wellness Center and the N7 program. First, the Wellness Center is funded by two-percent deductions from the salaries of tribal employees. Second, as part of the N7 program, money comes into the Wellness Center as payment for Nike shoes and apparel, and then that money is used to pay Nike for their product. In January

2

2012, Sunchild established a bank account at the Native American Bank in the name of "Chippewa Creek Wellness Center, DBA N7 Nike Team Dealer, Wilford Harlan Sunchild." He proceeded to deposit money from two-percent payments into that account. He then withdrew money from that account through ATMs and by cashing checks at pawn shops.

On November 22, 2013, a grand jury indicted Sunchild on one count of theft from an Indian tribal government receiving federal grants, a violation of 18 U.S.C. § 666(a)(1)(A) ("Count 1"), one count of theft from an Indian tribal organization, a violation of 18 U.S.C. § 1163 ("Count 2"), and one count of theft from a healthcare facility, in violation of 18 U.S.C. § 669 ("Count 3"). (Indictment, Doc. 1.)

On April 7, 2014, a two-day jury trial began on all three counts of the Indictment. The government put on eight witnesses on the first day trial and rested. (*See* Minute Entry, Doc. 33.) The government argued that Sunchild had opened the Native American Bank account ("NAB account") as his own "personal slush fund." (Doc. 64, at 73.) The government argued that Sunchild opened it as a Nike account solely as a "cover" to siphon two-percent monies from the Wellness Center. (*Id.* at 74.) According to the government, Sunchild acted without authorization and spent the funds for personal use, cashing checks at pawn shops and withdrawing cash at casino ATMs.

On the second day of trial, the defense's case consisted solely of Sunchild's

testimony. (*See* Minute Entry, Doc. 35.) The jury returned guilty verdicts on all three counts after an hour-and-a-half of deliberation. (Doc. 43.) On July 24, 2014, the Court sentenced Sunchild to a custodial term of 12 months and one day on each count to run concurrently, with two-year concurrent terms of supervised release. (Judg., Doc. 54.) The Court also ordered Sunchild to pay $19,735.77 in restitution. (*Id.*)

Sunchild appealed. (Doc. 56). The Ninth Circuit affirmed both his sentence and the restitution award. (Docs. 71, 72). Sunchild's conviction became final on May 11, 2016. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on April 25, 2017. 28 U.S.C. § 2255(f)(1).

**Claims and Analysis**

Sunchild claims that defense counsel provided ineffective assistance of counsel by failing to subpoena certain witnesses and documents. *Strickland v. Washington*, 466 U.S. 668 (1984), governs these claims. At this stage of the proceedings, Sunchild must allege facts sufficient to support an inference that counsel's performance fell outside the wide range of reasonable professional assistance. *Id.* at 687-88. Sunchild also must allege facts to support an inferenc that a reasonable probability exists that, but for counsel's unprofessional performance, the result of the proceeding would have been different. *Id.* at 694.

"[T]he Sixth Amendment imposes on counsel a duty to investigate, because

4

reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options." *Strickland*, 466 U.S. at 680; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Those "investigatory decisions must be assessed in light of the information known at the time of the decisions, not in hindsight." *Strickland*, 466 U.S. at 680. "[T]he investigation need not be exhaustive" as its scope "depends on such facts as the strength of the government's case and the likelihood that pursuing certain leads may prove more harmful than helpful." *Id.* at 680-81. "Because advocacy is art and not science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Id.* at 681.

In order to assess Sunchild's claims, the Court ordered defense counsel to produce, under seal and *ex parte*, all materials in his file related to Sunchild's potential claims. (Doc. 88.) Counsel produced the file. (Doc. 89.) Sunchild responded. (Doc. 90.)

I. **The Defense Case**

The Court addresses, as a preliminary matter, the theme of the defense's case. Sunchild argued that he had opened the NAB account and spent the funds in an effort to make the Nike program and the Wellness Center more financially independent and that he had "concerns about interference with that account" by the
5

tribe. (Trial Tr., Vol II, Doc. 64 at 98, 101.) Counsel argued that Sunchild lacked the mental state necessary to commit the offenses charged:

> At the end of the day, what the record reflects is that, you know, Mr. Sunchild saw the potential for the Nike N7 program to benefit the wellness center and benefit the tribe, and really saw it as a means for the wellness center to operate independently and to be free, really, of potential interference, management-wise and financial-wise, and, obviously, an opportunity for the wellness center to be a stand-alone entity. And those concerns, you heard him testify, prompted him to utilize the Native American Bank and the funds deposited into that bank to fund and use for the day-to-day operations of the N7 program
> . . . .

(*Id.* at 101.) Counsel focused on the fact that Sunchild had made no attempt to conceal his involvement with the NAB account. (*Id.* at 96, 100). In fact, counsel noted that Sunchild had used money from that account to make an initial payment to the N7 program. (*Id.* at 98; Ex. 20). Sunchild admitted that he opened the NAB account, (Doc. 64 at 14), and that he cashed a check for $5,000 at a pawn shop. (*Id.* at 16.) Notably, Sunchild's own testimony contradicts his argument that he was authorized to open the NAB account. When asked why he opened it, Sunchild stated: "Because of the tribal council's lack of support and endorsement of the N7 program and their inept, dysfunctional leadership which is demonstrated by our tribal leaders." (*Id.* at 14.)

Counsel also emphasized the Wellness Center's poor record-keeping and highlighted other issues with the government's records in the case. (*See id.* at 95-96) (indicating money—including two-percent monies—regularly went missing).)

6

Given the evidence presented by the government and Sunchild's own admissions, counsel's strategy does not appear to have been unreasonable.

## II. Sunchild's Claims

Sunchild argues that counsel provided constitutionally deficient representation when he failed to subpoena certain witnesses and documents. Sunchild insists that the omitted evidence would have shown that he was authorized to open to the NAB account and that his use of the two-percent monies comported with other uses at the Wellness Center and was in pursuit of establishing his Lids Team Sports dealership. A review of the record—including the files submitted by defense counsel on December 12, 2017—shows, however, that defense counsel investigated and considered the witnesses and documents identified by Sunchild. Defense counsel's decision not to use this information at trial therefore should be entitled to deference. S*ee Strickland*, 466 U.S. at 680-81. Moreover, independent consideration shows that defense counsel's decisions did not prejudice Sunchild.

Sunchild raises 10 claims in his § 2255. The Court will discuss those claims in turn.

### A. Claims One and Eight: Fawn Tadios and the Safe

Sunchild first argues that counsel should have subpoenaed Fawn Tadios, the former CEO of Chippewa Cree Health Center. Sunchild contends that Tadios

7

"could have provided testimony in regards to the Wellness Center budget, N-7 account, Lids Team Sports account, [Sunchild's] claims that 2% monies were directed to Boys & Girls Club, and purchase of safe from Rocky Stump for the funds [Sunchild] was withdrawing." (Claim 1; Doc. 81 at 4.) In the same vein, Sunchild insists that counsel should have subpoenaed Rocky Health board documents related to the purchase of a safe that would "prove Fawn Tadios was aware of ATM withdrawals used for day to day operation of N7 account sales and monies." (Claim 8; Doc. 81 at 13.)

Sunchild argues most persuasively that Tadios had authorized both his opening of the NAB account and his subsequent use of those funds. Records indicate, however, that counsel interviewed Tadios and that her testimony may not have been favorable to Sunchild. (*See* Doc. 89-1 at 149, 150, 155.) Notably, Tadios explicitly told Sunchild that he could not use Wellness Center funds for bonuses. (*Id.* at 155). Tadios further explained that Sunchild had never been responsible for making payments for the N7 program. (*Id.* at 158). Contrary to Tadios's position, Sunchild testified at trial that the money in the NAB account was used primarily for bonuses and "operation costs for the N7 program." (Doc. 64 at 21.)

The Court questions whether records that the Wellness Center acquired a safe would reconcile this inconsistency. Tadios's approval of the purchase of a

8

safe may have indicated that she knew that N7 money was coming into the Wellness Center. Two-percent monies from tribal employers represented the only money deposited into the NAB account—and the only money at issue. As pointed out by the government, the actual money from the N7 program was never at issue. (Doc. 64 at 74.)

Moreover, the government indicted Tadios in June 2013 on charges of theft arising out of conduct unrelated to the current case. Tadios was indicted for converting federal funds for personal use, using federal funds for personal benefit, and misapplying clinic funds. *See United States v. Tadios*, CR 13-51-GF-BMM. Given the potential risk of Tadios's testimony and credibility concerns, counsel's decision not to subpoena Tadios to testify or to rely on evidence based on her testimony at trial appears to have been reasonable. *See Strickland*, 466 U.S. at 687-88. And, for the same reason, counsel's decisions did not prejudice Sunchild. *Strickland*, 466 U.S. at 694. Claims One and Eight are denied.

### B. Claims 3, 4, 5, and 9: Lids Team Sports

Sunchild further argues that defense counsel should have subpoenaed Blair Patton, Eleanor Yellowrobe, Tommy VanDuerzen, and related documentation to show the validity of his Lids Team Sports activities. (Doc. 81, at 5, 7, 8, and 14.) Lids Team Sports, an affiliate of the N7 program, served as an expanded dealership of Nike products. (Doc. 64 at 40, 49.) According to Sunchild, he was attempting

9

to establish such a dealership using the money from the NAB account with the help of Blair Patton, Eleanor Yellowrobe, and Tommy VanDuerzen.

Blair Patton owned Black Sheep Sporting Goods, and according to Sunchild, would testify to the existence of the Lids Team Sports account and why Sunchild insisted that it be set up separate from the Chippewa Cree Tribe. (Claim 3; Doc. 81 at 5.) Eleanor Yellowrobe allegedly gave Sunchild a $6,200 cashier's check to open the Lids Team Sports account. (Claim 4; Doc. 81 at 7.) Tommy VanDuerzen served as the N7 Program Coordinator/Lids Team who "w[ould] provide testimony which contradicts the testimony of Angela Stansfield," the government witness from Nike. (Claim 5; Doc. 81 at 8.) Finally, Sunchild insists that Lids Team Sports account information would "contradict Angela Stansfield's testimony that Chippewa Cree Wellness Center had only one account" and provide evidence that authorities were aware of other accounts. (Claim 9; Doc. 81 at 14.)

Even assuming that the evidence would be as Sunchild purports, the relevance of that information seems questionable at best. Even if Sunchild used the NAB account to start and/or expand his Lids Team dealership activity (in addition to the bonuses and N7 operating costs discussed above), none of Sunchild's evidence shows that any tribal official *authorized* him to spend two-percent monies as a start-up fund for his Nike dealership program. (*See* Jury Instruction No. 14, Doc. 41 at 14 (defining "embezzle," "misapply," and

10

"conversion").) Sunchild's own motion argues that he went out of his way to make sure the account stood separate from the Tribe. (*See* Doc. 81 at 5.) Additionally, counsel's records indicate, that at least in the case of Patton, certain testimony may not have been good for Sunchild. (*See* Doc. 89-1 at 286-87.)

The failure to call these witnesses or subpoena further information as to the Lids Team Sports program did not prejudice Sunchild. Claims 3, 4, 5, and 9 are denied.

### C. Claim 7: Wellness Center Budget

Sunchild argues that defense counsel should have subpoenaed the Wellness Center/Boys & Girls Club Budgets for 2012, 2011, and 2010. Sunchild suggests that these documents would "provide evidence that Boys & Girls Club budget was a shell account which systematically drained the Wellness Center budget," and that India Blatt was aware of diversion of two-percent monies. (Claim 7; Doc. 81 at 12.) Sunchild's focus on the financial relationship between the Wellness Center and the Boys & Girls Club, (*see* Petition, Doc. 81 at 4, 10, 11, and 12), misses the mark.

None of Sunchild's purported evidence shows that the Tribe authorized him to use the monies as he did. Even so, Sunchild's uncontroverted position on this issue was presented to the jury through his own testimony. (*See* Doc. 64 at 9-10.) The jury also heard Sunchild's position as to the absence of the Health Board

11

account book and the potential exonerating nature of the account book. (*See id.* at 14.) Defense counsel raised these matters in his closing. (*See id.* at 95.) Given their questionable relevance and the fact these matters were presented to the jury, defense counsel's actions did not cause prejudice to Sunchild.

### D. Claim 6: Montana Department of Labor

Sunchild further argues counsel should have subpoenaed records from the Montana Department of Labor. He contends that these records would (1) show that Sunchild received full unemployment insurance benefits based on investigation of his termination, (2) show that the Wellness Center and the Boys & Girls Club were one entity, and (3) contradict India Blatt's testimony as to use of two-percent payments. (Claim 6; Doc. 81 at 10-11.) As discussed above, Sunchild's focus on money spent on the Boys & Girls Club misses the mark.

The Montana Department of Labor admittedly found Sunchild had not been discharged for misconduct. Sunchild's Notice of Determination merely states that Sunchild's employer failed to submit any information regarding the termination and that it made its determination "[b]ased on the information available." (*See* Doc. 90-1 at 5.) This finding did not bind the jury and likely easily could have been refuted by the government. It was reasonable for defense counsel to conclude that its presentation to the jury would not aid in their decision.

### E. Claim 2: Carol Swan

Sunchild insists counsel should have subpoenaed Carol Swan, the Business Development Representative of Native American Bank. Sunchild argues that Swan "would testify that there is a document in place authorizing the N-7 account." (Claim 2; Doc. 81 at 4-5.) The government asked Sunchild during trial about this letter. The government emphasized Sunchild's failure to produce the letter. (*See* Doc. 64 at 20.) Counsel's records indicate that he was aware of the bank's requirement for a letter. (*See* Doc. 89-1 at 7, 24.) Counsel's records further evidenced that he unsuccessfully attempted to subpoena Native American Bank. (*Id.* at 289.)

Counsel's failure to take further action related to this letter may have been unreasonable given the dispute as to Sunchild's authorization to open the NAB account. It seems questionable, however, whether counsel's decision caused prejudice to Sunchild. As discussed above, authorization to open the account was only part of the government's case. A showing that Sunchild was in fact authorized to open the account—assuming that is what production of the letter or the testimony of Ms. Swan would have shown—would have no bearing on whether the Tribe had authorized Sunchild to use the money as he did. The government presented substantial evidence that Sunchild used the money on personal expenses. Sunchild's ability to show that he had the authorization to open the NAB account would not have controverted that evidence. Claim 2 is denied.

### F. Claim 10: Credit for N-7 Deposit

Finally, Sunchild argues that the government failed to credit him with "N-7 deposit of 7229.00 and cashier check for $13490.46." (Claim 10; Doc. 81 at 15.) The Ninth Circuit addressed and rejected Sunchild's restitution challenge. (*See* Doc. 71.) His attempt to relitigate this issue through § 2255 proves unavailing. Claim 10 is denied.

### G. Claims Raised in Sunchild's Responsive Document

In his response to the disclosure of defense counsel's file materials, Sunchild potentially raises new grounds for relief, arguing—or at least appearing to argue—that he lacked criminal culpability because he was contacting the authorities (such as "HIPPA, OSHA, Senator Max Baucus, and The Attorney General") to report misappropriation of federal monies by others. (*See* Doc. 90 at 3.) It remains unclear how this purported evidence would have negated any of the offense elements of the crimes charged. Other than to further emphasize the general chaos and disorder related to the financial situation at the Wellness Center, the presentation of such evidence would not have altered the outcome as it relates specifically to Sunchild's opening and operation of the NAB account.

### H. Conclusion

Sunchild wanted to present a case where he took necessary action for the betterment of the tribe and the Wellness Center. Defense counsel attempted to

14

present that case.[2] Defense counsel chose to attempt to make that case without opening the door to potentially inconsistent, distracting, and harmful evidence. Defense counsel made an informed decision based on his professional judgment. His strategic decisions must be respected. *Strickland*, 466 U.S. at 681. Sunchild suffered no prejudice from counsel's chosen defense strategy. The presentation of the additional evidence outlined above would not have persuaded a reasonable juror to retain reasonable doubt as to any of the three counts charged. Sunchild's motion and the files and records in this case conclusively show that Sunchild is not entitled to relief, 28 U.S.C. § 2255(b). His motion is denied.

**I.      Certificate of Appealability**

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

---

[2] Sunchild's responsive filing reinforces a finding that counsel knew of all of these avenues of inquiry, stating that when he (Sunchild) asked counsel to investigate these things, counsel determined they were "irrelevant." (Doc. 90 at 2.) That assessment was not unreasonable.

(2000)).

Sunchild's claims meets the "lenient" standard required for a COA. Reasonable jurists could agree that Sunchild identified respects in which counsel's performance may have been unreasonable. A COA is warranted.

Accordingly, IT IS ORDERED:

1. Sunchild's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 81) is DENIED; and

2. A certificate of appealability is GRANTED. The Clerk of Court shall immediately process the appeal if Sunchild files a Notice of Appeal.

DATED this 25th day of January, 2018.

Brian Morris
United States District Court Judge